Chief Judge Colleton, and may it please the Court, this case is about whether states have the power to protect their citizens from synthetic THC products that intoxicate adults and poison children. You'll have to speak up for me. Sorry. If you move the microphone, that'll help if you aim right into it. Okay. This case is about whether states have the power to protect their citizens from synthetic THC products that intoxicate adults and poison children. When Congress lifted the federal ban on hemp, it did so by carving out a subset of cannabis with extremely low levels of naturally occurring THC from the definition of marijuana. The marijuana industry thought that created a loophole for it to synthesize other THCs that are just as intoxicating from hemp and to market those products, including to children, as hemp. Those are the products that plaintiffs brought this lawsuit to sell. We don't believe that federal law legalized those products, but what's absolutely clear is that federal law does not preempt the states from banning them. So I'd like to start there, and then if I have time, address some of the other issues on appeal. I think there are about three theories of implied preemption in this case, and I'll list them and then try to say a bit about each. The first, which the district court did not adopt, but which I take the plaintiffs to argue at times in their brief, sorry, is that merely by legalizing hemp at the federal level, states are preempted from banning hemp. The second is that when a state opts into the hemp production program, it is conditionally preempted from regulating hemp more strictly than federal law. And the third is that whatever states can do, they cannot define hemp differently from federal law. So beginning with the first, which the district court rejected, the district court It sounds to me like you were talking the merits of the case. Yes, Your Honor. And that's what's not on appeal. What's on appeal is the denial or the grant of a preliminary injunction based on preemption. Yes. So the merits of the Arkansas law are down the road. Well, likelihood of success is before this court, and we don't believe. Yes, but that's different than preemption. The district court avoided the data phase factors, which neither of you cite in your briefs, by just saying it's preempted, to which my reaction is there are many state laws that are invalid, but not because they're preempted. So which is this? And I don't get any help on that question in either of the briefs or from the district court. Well, this is not a preempted law, and this is not a vague law, and we don't think it's invalid on any other ground. But the district court said that the plaintiffs were likely to succeed on implied preemption, expressed preemption, and vagueness. So I think that the likelihood of success But that's different than the merits. Nobody gets it. I'm sorry. Go ahead. To me, you have completely missed what's relevant to this interlocutory appeal. I agree that it's different from the ultimate merits, but if plaintiffs are not likely to succeed on the merits of those claims, then the injunction should be reversed. Did you raise the data phase factors on appeal in your brief at all? For example, irreparable harm? Yes. Yes, we raised irreparable harm, and we also said that we thought that the district court misapplied the standard of review that applies when you're reviewing a State  I do recall that, but what's your argument on irreparable harm? Why isn't there irreparable harm here? Let's set aside the merits and the likelihood of success for a moment, but what's the irreparable harm argument for this case? Well, there's certainly some harm to a regulated entity every time that it's prohibited from selling what it wants to sell, and I agree that the plaintiffs want to sell some of the products that we've used. Well, what case says that? You know, you say that like it's obvious. It's not. Well, we're happy for you to reverse if you do. That's an awesome litigated issue. We're happy for you to reverse. Usually the proponent of that proposition loses. Well, we're happy for you to reverse if you disagree with that proposition, but turning to the harms on our side, the plaintiffs are selling products that we've shown in the record poison children, and so the balance of harms here between prohibiting these products and causing plaintiffs to lose some, though not all, of their business, and the harms to children, we think those harms tip in favor of the State, in addition to the sovereign injury that any State suffers whenever any of its laws is enjoined. But if I could return to likelihood of success on implied preemption, as I was beginning to say, the district court rejected the proposition that we are preempted from banning hemp simply because Congress legalized hemp, and the statute says that States may prohibit hemp in subsection F of 1639P. It says that if a State does not choose to regulate hemp, hemp is legal in that State unless the State has prohibited it. Now, is your argument that the State can redefine hemp as well? We, yes, we believe that the State can redefine hemp as well, so I'll turn to that theory of implied preemption. So, as a general matter, there's no doctrine that States must define a term in the same way that federal law does. States define drugs differently from federal law all the time. That's how this Court gets many of its cases about the categorical approach. You know, a defendant says the State has defined this drug more broadly than federal law does, therefore, my offense is not categorically covered by federal law. I take the plaintiffs to be arguing that there's something different about this statute, primarily because the conference report says that States ought not alter the definition of hemp. The first thing I'd say about that is that's legislative history, and that rule of preemption did not make its way into the statute. The statute just says that we may regulate hemp more stringently, but we may not regulate it less stringently. Whatever we do if we participate in the program has to be consistent with federal law. The conference report then adds this third rule. So, if you read the conference report as they do, we would say it's inconsistent with the statute and you can't follow it. That said, we don't read the conference report in that way, but in context, it says that States are not authorized to regulate hemp less stringently or alter the definition of hemp. They may regulate it more stringently. So, we read the definitional part of that sentence as grouped with regulating hemp less stringently, and what Congress is really saying is that you can't dilute the definition of hemp if you're participating in the program. And I'd also say, sorry. If not, you didn't finish the sentence.  They did not say what? So, the sentence. This distinction, frankly, is beyond me. So, I'm trying to get a better understanding of it. So, the sentence of the conference report reads that States are authorized to put more restrictive parameters on the production of hemp, but not authorized to alter the definition of hemp or put in place policies that are less restrictive than this title. So, we read that definitional clause of the sentence in context with, or put in place policies that are less restrictive than this title to mean that States may not put in place a less restrictive definition of hemp. If States could put in place policies that are more restrictive substantively, but they couldn't alter the definition, it would merely be a drafting exercise. A State could say hemp is whatever federal law says, but you can't produce this kind of hemp. But a State could not say hemp is defined at 0.2 percent THC, but they could accomplish the same thing in a different way. And so, it wouldn't make any sense to read the conference report in that way. And I'd also say that this rule that we can't alter the definition of hemp, that doesn't in any way follow from the purposes of the Farm Bill or the purposes of the Hemp Production Program. How did the district court think you had altered the definition? The district court thought that we had altered the definition of hemp in two ways. One, by this list of synthetic THCs, which it thought were legalized under federal law. You mean by calling them hemp under State law? No, the opposite. By saying that they're not hemp under State law. By saying that, for example, synthetic Delta 8 THC is not hemp under State law. The district court thought that is hemp under federal law, and we could not carve those out of hemp. And isn't your answer to that, well, it doesn't matter because we're allowed to regulate it more stringently anyway, even if it is hemp? Yeah, that is our answer. Yes. Why don't we just, I don't understand, why are we getting? Isn't that the simple answer to the case? Yes, I agree. There does seem to be this definitional sub-theory of preemption that even if we can regulate hemp more stringently in some substantive way, we just have to copy and paste the definition from federal law. That makes no sense to me. There's no preemption doctrine that says that. The legislative history, as I've explained, doesn't support it. What did the district court say about why you can't just regulate it more stringently? I'm not sure that I can extract a coherent theory from what the district court said. He appears to say two things. One, you just have to accept the definition of hemp. Changing definitions in a federal program is not proper, he says. He doesn't explain why that is. So that was really the concern, that the district court thought you could regulate it more stringently, but you can't change the meaning. Correct. I think the district court can also be read to say if you opt into this program, you just have to accept the whole program. You can't deal with it a la carte. But the statute says just the opposite. What does it mean to opt into the program? Well, a state doesn't have to regulate hemp production if it doesn't want to. It can say the USDA can handle this. Or a state can ban hemp altogether. But I mean, what does it mean to opt into the program? Do you have some communication with the federal government? Correct. We submitted a hemp production regulation plan to the USDA. And one thing I would like to emphasize about these plans is that they're merely negative. We test hemp to make sure it's not marijuana. That's what federal law wants you to do in this hemp production program. It's not a hemp growth incentivization program. It's not a subsidy. It's merely a testing regime and also a disposal regime if plants are produced that go over the limit. So there's no reason to think that the purposes of this program are at odds with more stringent regulation of hemp. And if there were any doubt about that, the statute, of course, expressly says, 1639P.A.3.A., that a state inside the program can regulate the production of hemp more stringently than federal law. I would like to talk a bit about the attorney general's role in this lawsuit, if there are no further questions about preemption. What about vagueness?  Can you come to that? Yeah, sure. I'll cover that. The terms that they've said are vague are anchored to lists of prohibited substances. And they're merely prefatory. We haven't said freestanding, don't sell any synthetic THC or don't sell any psychoactive substance. We said, this is a list of synthetic substances. It doesn't really matter that that adjective is there, because the statute tells you what the synthetic substances are. There's a catchall that uses psychoactive, but that's limited to a psychoactive THC that's derived from hemp. So whether or not one could have doubt about what psychoactive substances are in the abstract, there's a pretty well understood line about what a psychoactive THC that's derived from hemp and what's not. How do you know it refers to psychoactive THC derived from hemp? The language is, I believe, any other psychoactive substance derived therein. And then the subsection above that is a product derived from industrial hemp. So I think therein refers to industrial hemp, the little I above. That's how we know that. All right. What about continuous transportation? Are you saying that's a term of art? That's a term of art that this Court has used in Century Indemnity, that the Supreme Court has used in Jacksonville Paper, that Federal statutes use to define interstate commerce. Congress thinks that it clarifies the phrase interstate commerce to say it's continuous transportation. And so, yes, we are saying that it's a term of art. What body of law would we look to see how long a person can stop and so forth? All the Federal and State cases that have interpreted that phrase. But under what statutes? Under the Shipping Act, for example. Under the insurance policies that this Court has interpreted in cases like Century Indemnity. Are they all consistent? As far as we can tell, and they have not pointed to any inconsistency. They haven't identified a single case where a court said, no, continuous literally means continuous, never any stops. But, I mean, are the exceptions, are the stopping rules the same in various states? I believe so. Yeah, I mean, there may be disagreement from court to court about whether stopping in a port for a year and domesticating a product in a warehouse is still continuous transportation. But that kind of disagreement about a commonly applied rule isn't going to make a statute vague. I do then, if there are no further questions about vagueness, want to say a bit about the Attorney General's role in this lawsuit. How does it affect this interlocutory appeal? How does the Attorney General's role in this lawsuit affect it?  Oh, so we have a right. I didn't think the immunity question was raised on appeal because of the Governor's role. No, it was Judge Loken. We have a right to immediately appeal a denial of sovereign immunity. Yeah, but in the issue presented, maybe I missed it. But how does he, how do we, I understand why you care about the Attorney General. And the Governor. If we don't have to write about it, we won't. I agree, but we do have a right to an immediate appeal of the denial of sovereign immunity. And I don't see how it can be avoided. If we were to vacate the injunction, do you think we should still address the sovereign immunity issue? Do we have to address the sovereign immunity issue in your view? I think the only way that you could avoid addressing that question is if you said that all of plaintiff's claims fail as a matter of law, but there are claims that are not a part of this injunction. There's a dormant commerce clause claim, for example. I thought you were just appealing the granting of an injunction. No, both the denial of the motion to dismiss based on sovereign immunity and the granting of an injunction. I think we have jurisdiction over the denial of the motion to dismiss. When it's premised on sovereign immunity, just like qualified immunity. Have we said that? Yes. Yes, you have said that. And we cited cases in our jurisdiction. Doesn't the Attorney General have authority to join with these local prosecutors in enforcing the law? We don't find that the Attorney General has that kind of general prosecutorial authority in Arkansas law. Certainly the district court didn't point to that. Plaintiffs haven't pointed to that. The theory has been, rather, that the Attorney General is a proper defendant because he can write a letter that says these provisions have been enjoined, and then that would then trigger the effectiveness of other backup provisions in the statute. Are you saying the Attorney General's office never joins with state prosecutors in Arkansas to enforce various state laws? I am saying that the Attorney General can't prosecute laws, can't prosecute the violations of laws in his own right under Arkansas law. In his own right. Let's say one of these county prosecutors initiates a case and asks the Attorney General for assistance. Couldn't the Attorney General send somebody out there to litigate the case? It's possible to have a situation where somebody is deputized from the Attorney General's office, but that person is always acting under the supervision of the prosecuting attorney. And so if the prosecuting attorney isn't joined, this operation can't work. And it's always assistance under the supervision of the prosecuting attorney. He's just sending an employee from his office to work under that person's supervision, not the Attorney General's. So do we look just at 629 when we're deciding the role of the Attorney General? Or, I mean, that act is sort of part of a broader sort of regulatory structure in the state, isn't it? I mean, and I'm wondering, does the Attorney General play a role? In other words, even if you're right on 629 itself, it's part of a broader regulatory scheme. And for example, if growers are operating under a particular license and there's a finding of some sort of misconduct, the Attorney General can be brought into play in those situations. Am I reading the law correctly? And does that matter if it's true? I'm not aware of any collateral enforcement method of the one you're describing, but I think that plaintiffs have an obligation to plead that in order to pierce the veil of sovereign immunity and make the Attorney General a proper ex parte young defendant. And they haven't argued it. The district court hasn't pointed to it. And their only argument is what? That they make that certification that a particular provision has been enjoined? Is that? That's it. That's the only thing that we have found that the other side has pointed to that the district court pointed to. And no court has ever held that that kind of certification is a proper basis for ex parte young suit. If I could, I'd like to reserve my remaining time for rebuttal. Thank you, Your Honor. You may. Thank you for your argument. Mr. Metazatagan, we'll hear from you. Chief Judge Collison, may it please the court. Absent Metazatagan for the plaintiff's Apollese Biogen et al. The lower court's order granting a preliminary injunction against the Arkansas Act 629 was proper. And we request that it be affirmed. Judge Wilson applied the appropriate legal standard for enjoining a state statute. And to Judge Larkin's point, we cite data phase at pages 10, 18. I understand. What? We do cite data phase at pages 10, 18, and 60 of our briefing. And under the data phase in Planned Parenthood versus Rounds standards. What's the irreparable injury? The irreparable injury? To my clients, Your Honor, it's substantial. Number one. What is it? The irreparable injury is.  Is it economic? It's criminal and economic, Your Honor. There's a criminal component to Act 629. And so for a farmer like Bill Larkin. This is premature for criminal enforcement under the case law. I just didn't hear. Well, typically the fear of future criminal enforcement does not arise, does not create irreparable injury for preliminary injunction purposes. This case is unique, Judge Larkin. It's unique because, number one, there was an enforcement attempt identified in the record with respect to Dripper's Vape Shop. There was or wasn't? There was. There was a criminal enforcement attempt. And they effectively ordered our client to take the products off the shelf. Did the district court rely on that in its order? The district court did not rely on that in its order. But it did identify the potential for criminal sanction in addition to the unknown but substantial monetary harm. So it was both criminal and monetary. And it was an unknown monetary harm in the finding, as I recall, right? Correct. And in. . . What would be the irreparable monetary harm? Loss of sales or something? Well, so on August 1st, if this law went into effect, Bill Morgan, the farmer, has crops in the field. If the hemp definition changed for what Arkansas attempted to 0.3 percent delta-9 THC of the hemp-derived CBD, which both parties agree makes no sense, and our chemists agree to that, and just for the courts. . . What would be the harm? Yeah. You're saying it's unmarketable? The harm is that it would. . . You can't possess it. You can't do anything with it. What are you supposed to do with these products that you now have possession of? And you've made these investment-backed decisions based on Arkansas' historic treatment of hemp and its acceptance of the Federal Farm Bill. But what's irreparable about that? The irreparability in addition to the unknown but substantial ruination of the business. There was a property interest in continuity of a business. That harm would be irreparable if Act 629, which is, in our view, unconstitutional, were allowed to proceed. Why isn't there an adequate remedy? Well, number one, there's no ability for us to sue the State to obtain monetary damages. The Farm Bill doesn't recognize. . . But you haven't mentioned any. As the district court identified, as we identified at argument at the preliminary injunction hearing, and as we further identified in our pending motion for partial summary judgment that's pending and fully briefed. You keep diverting. Can you just answer the question, what would be the economic harm to the farmer? You said he would have this land, he has these plants, and then you start diverting. What would be the economic harm? The economic harm is, number one, the uselessness of the crop that he's grown. What would he do with it otherwise? He'd be ordered to dispose of it. What would he do without the injunction? He would. . . Without the injunction? With the injunction. He's able to continue harvesting and selling and marketing his product through the States. So your answer is he's going to lose revenue from sales? He's going to lose revenue from sales. Well, why don't you just say that, then, if that's the harm? And he will face criminal prosecution. What's the evidence he can't take it to another State? Well, if in Arkansas we have a new definition of hemp, and also under Arkansas Act 629, there is really no effective provision that accommodates interstate transportation. Judge Wilson identified this in his order, rejected the idea that Section 7, which the defense relies on, was effective. And it's not effective. But if Section 7 is effective, he can ship it out of State, right? If Section 7 is effective, you can engage in continuous transportation, not out of State, through the States. And so, arguably, Arkansas wouldn't allow Mr. Morgan to do anything with the hemp. But we don't know that, right? Just like in the criminal context, you say there is a threat in prosecution. I guess there hasn't been a prosecution. And we don't know that there's been enforcement by the State at this point, right? Well, we do know that there has been some enforcement by the State at this point. I can tell you that there have been contacts by a criminal defense attorney because the State is actually – Is there anything in the record, though? Nothing in the record at this point, Your Honor. You think the statute would forbid the farmer from growing it in Arkansas and then transporting it to another State? As defined, correct. It sounds like a violation of interstate commerce clause. The Feds don't prevent that. It's a different case. And that issue hasn't been addressed yet by the district court. Has or hasn't? Has not yet been addressed by the district court. We do have a commerce clause claim in the court. So that means no reparable injury shown, at least in this kind of – in your answer to what's economic. So, again, the district court did identify the economic harm that's unknown but substantial. That doesn't get you a preliminary injunction. As well as the criminal prosecution. Case laws – Prosecution. – is everywhere on that. I think you're right. There are cases that go both ways, Your Honor. I think it's really context-specific. So the district court didn't analyze it. So now what do we do with it? You're right. Cases are all over the place because facts and laws are all over the place. I think the court can – The district court just ducked the question. I think the court can affirm under any basis. And I would just identify the voids that we – adequate showing of a reparable injury. That, I know. And I accept that, Your Honor. The showing of a reparable injury in the context of cystic void for vagueness. How is anyone in Arkansas supposed to know what applies to them as far as the criminal penalties that will put them in jail? A person of ordinary intelligence ought to know that. Judge Wilson of exceptional intelligence could not answer the hypothetical that we proposed. And we didn't hear an answer to that hypothetical. Well, given the vagueness of the building codes in Minnesota, I think the same could be said of any property owner. And so I think the chemistry context of this case is unique. And I'll just – if I could, just identify a few things to make my organic chemistry professors happy. The idea of synthetics. First of all, multiple federal courts have – But they're all enumerated right in the statute. The specific compounds at issue here, aren't they all enumerated in the statute? They are enumerated in the – So I don't understand. What's the vagueness argument then? If it says the following synthetic substances are banned and enumerates 10 of them, what difference does it make whether synthetic in the abstract is vague if they've all been enumerated? Because the definition that Arkansas has supplied, in any case, is inconsistent with that idea of synthetics. Delta 9 THC, for instance, doesn't exist. Has already applied? This hasn't been applied. It has not been applied, Your Honor. So what's your argument? Is it in the cloud somewhere? We're back to Abbott. I believe – We're all future threats. Give me a preliminary injunction today. So I believe, Your Honor, that, number one, there was a question in discussion below as to whether or not Section 7 of Act 629 became effective. Judge Wilson said it was not effective. We agree with that proposition. The Rules Revision Committee in Arkansas doesn't allow substantive changes to law, and these changes in a trigger clause, which makes this case truly unique among all of the federal cases that have addressed hemp. Did the district court find that the statute, or Section 7, was not effective yet? I'm trying to remember.  I believe in footnote 4 of his order, rejecting the idea that Section 7 is effective. And so to the extent that Section 7 would become effective, I think, again, under rounds, the court has – the district court has discretion, especially in blending issues that relate to both fact and law, to identify an appropriate remedy. And in this case, I think, in reading the order, Judge Wilson understood that if he enjoined just the first part of the act that was – that had become effective, the next consequence of that would be that the contingent clauses would – the trigger would be pulled by the Attorney General, and the contingent clauses would – excuse me – become effective. And so considering the range of options available to him, the irreparability of the harm, and the substantial likelihood of prevailing at trial on the merits, I believe Judge Wilson found that remaining – or maintaining the status quo peaceably prior to the issue of the injunction was the best course to set aside the entirety of the act so that we could have a trial on the merits. And again – Footnote 4. Footnote 4 in his order says HR Rep. 115 at 738. I apologize, Your Honor. I may have mistaken the footnote, but it isn't a footnote. I can adequately represent that to you. It's either 3, 4, 5, 6, or 7. I'm not sure it's any of those either. 3 is Pub Law No. 115-334. 7 is 7 – is id at 1014. 6 is the 28 Farm Bill. But there are 47 footnotes, so you might have a shot if we keep looking. I am certain that – I understated it. There's 68 footnotes. I'm shooting for 64. 64. That's Arkansas Code Annotated 5-64. I think the district court there says that Section 7 takes effect if Sections 1 through 5 are enjoined. So that would be a finding. A subsequent footnote – and I can go pull my order. I mean, for my purposes, it's – A subsequent footnote does identify the lack of effectiveness of Section 7. Yeah, I don't remember that, but that could be my memory. So let me ask you this. A lot of this debate on the likelihood of success in the merits goes to the definitions. Will you try to simply explain to me why the Arkansas definition conflicts? I understand the State says it doesn't matter, it can conflict. But how specifically does it actually conflict with the Federal definition? I know there's three other words in there. I can't figure out why those matter. They matter, Your Honor, because we're, again, engaged in a chemistry-based context. That's why I don't get it. And one molecule is delta-9-THC. Delta-9-THC does not exist in the cannabis plant sativa L. Delta-9-THC acid, T-H-C-O, does exist – or T-H-C-A, excuse me, does exist. That decarboxylation process when you heat hemp, you cut it in the dry weight basis. You cut a stalk at the top third of it. You dry it for about 30 days, and you measure the delta-9-THC content and the T-H-C-A content at that point. Because decarboxylation causes a chemical reaction that changes the acid to the stable molecule. Well, the DEA doesn't agree with you, and neither does the State of Arkansas, right? Now, you have some, what, Ninth Circuit case law that supports your position? Is that fair? The Fourth, Ninth, and the Southern District of Illinois would all support the proposition that delta-9-THC is – Now, those cases, though, don't involve an injunction similar to this case, do they? They do not. This is the most unique case in all of the cases that deal with that. So far. And I think, Your Honor, it's because this is an unusual creature of the legislature. There's a trigger clause in a criminal – baked into a criminal act that changes the definition. I didn't finish my answer to your question, which is, it defines delta-9-THC, 0.3% of delta-9-THC, of the CBD. Cannabidiol, or cannabidiol, excuse me. That is a separate molecule. CBD is an isomer of delta-9-THC, and there cannot be a delta-9 molecule inside a CBD molecule. It doesn't make sense. The state agrees with that proposition in its briefing. Our expert testified as to that, how many Toyotas are in a Ford answer. And more than that, the hemp program manager for the state of Arkansas, as well as the state's expert, agree that that definition doesn't make sense. And so from that position, if you take the Farm Bill – it's just identifying preemption. The Farm Bill has a feature in it that says states, number one, can request to have that primary regulatory authority over hemp production. And those hemp production rules can be more stringent. We don't disagree with that. We don't disagree with the generality that states can also prohibit the sale of these products, and that there can be more stringent regulation outside of the production context. But states – What's the problem here, then? We have to – You think they're regulating more strictly than the federal law. We have to be talking about the same thing. For instance, A-2, A-2 – Just answer the question. There goes another diversion. I'm not trying to diverge. It's not that they're – Don't you imagine all of the direct questions that I think are bothering all three of us. It's not that they're regulating production or something else more stringently. It's that they're changing the definitions, and so we're not talking about the same thing. So you're – That's not in the statute. Well – You're talking about a non-statutory – It is in the statute.  Judge Loken, it is in the statute. It's in the Congress report. Where is it in the statute? The definition of hemp itself. That's – Well, that's the way you maneuver it, yeah. The definition of hemp – Aren't you just recharacterizing more stringent regulation as a change in the meaning of hemp? I mean, isn't it functionally the same thing? I don't think so. Especially under 1639 – 79 P.A. 2.A. 2, which requires states to test for the delta-9 THC concentration of hemp. Hemp defined at federal law. Not this unusual, nonsensical definition of hemp that Arkansas has adopted. And so it's – we have to be talking about the same thing, and if we have a question about the breadth of the hemp definition, the conference report answers that question for us. It tells us just precisely what – No, we don't – legislative history does not drive the train. I understand that. But the fact that there is a definition that is comprehensive and covers the ground, that definition is preemptive. How else could there be – No, at least half of my colleagues would say it shouldn't even be considered. I think when you take that definition and you also consider – No, the definition is not part of the law. That's what the – Justice Scalia and his – has said, and many have agreed for now for some decades. The conference – Legislative history is not the law. And, Your Honor, I'm not pointing to the legislative history. I'm pointing to the text of the Farm Bill that defines hemp. I had an opinion in which I cited the title of the conference report on a treasury regulation. One of my colleagues dissented for even doing that. So you're on very thin ice here. That's a dissent, though. That's right. That's a dissent. No, I thought it was correct to do it. And I'm not saying this is irrelevant, but it doesn't drive the train. I think when you take the definition of hemp and also consider the explicit preemption language of the Farm Bill, states cannot prohibit the interstate transportation, number one, and shipment, number two. Arkansas law doesn't even mention shipping. Okay, that brings me to a point I was going to start with. Of both hemp and hemp products. Well, did you argue to the district court that either there is no presumption against preemption or that it doesn't apply here? I don't recall arguing against the presumption against preemption. The district court didn't even refer to it. Just ignored it. We certainly addressed it in our brief to this Court. And that presumption would not apply in a case where ‑‑ I had my note here. I'll move on from it. You said that all this unique chemistry makes something that's not apparent from the face of the Farm Bill so clear that it overcomes the presumption against preemption. I, frankly, I don't think you can find a case anywhere that would support that. Now, the presumption is just a way to avoid the data phase factors, of course, so it doesn't solve the injunction question. I would say ‑‑ This is not a preemption case. This is a merits case. I agree that the interlocutory appeal does ‑‑ the arguments have extended beyond the scope of the interlocutory appeal here. As it relates generally to the sovereign immunity issues, we do believe that the Attorney General has an absolute ‑‑ I'm not following. I can't hear you. We do believe that the scope of this appeal has extended beyond the traditional scope of an interlocutory appeal here. No, it hasn't. You may think it has. Your Honor, the arguments referred really do reach to the merits. And what we're looking at here is whether there is a ‑‑ The arguments are addressing merits‑type issues. Yeah, that's what the lawyers are doing, but not necessarily what we're going to do. Yes, Your Honor. What I would ‑‑ You've done nothing but brief the merits on an interlocutory appeal over the random or denial of a preliminary injunction. I would ‑‑ I understand that, Your Honor. I would say to the data phase factors under NEKIN and KEN, the last two factors do merge, and we've identified that in our briefing to the district court as well as to this court. And just to make ‑‑ Well, I think public interest, there's a ‑‑ one reason there's a presumption against preemption is the public interest in state laws being enforceable and enforced. There's also a ‑‑ there's no presumption in the state law that is unconstitutional against an injunction where the state law is unconstitutional. Say that again. Where the law is unconstitutional, the public ‑‑ Against the merits. It's not unconstitutional. And the trial court below found that we had a substantial likelihood of prevailing on the merits at trial. I see that my time is done. I would like to answer any questions that the Court might continue to have. Very well. Thank you for your argument. Thank you. Mr. Steinberg, you have 56 seconds remaining. You may proceed. Just two points. I recognize that the district court's irreparable harm finding is perhaps more problematic than we argued in our briefing. But we would ask that, as the Court often does, if it finds a lack of irreparable harm, it also addressed likelihood of success, which could guide the district court and the parties ‑‑ Say that again. You're not speaking up. Sorry. You want an advisory opinion on the merits. Yes. You want the merits even more. We would like an opinion that addresses both those two prongs, to provide guidance on ‑‑  And also there are pending cases in other district courts in this circuit that raise similar preemption claims. Nothing more dangerous for an appellate court deciding an interlocutory appeal than making bad law the case. And that's what ‑‑ I'm not saying you're urging bad law, but there is a great pressure not to do that. And I don't see the reason ‑‑ I don't see what overcomes it here. I mean, you can go back and deal with the merits all forever. What's your other point? On whether Section 7 is effective, if you would just look at page 8 of our brief, it explains why the Code Revision Commission corrected the cross reference to include Section 7. But what did the district court find? I know your brief. I don't know what the district court did with that. The district court stated in the sentence that you found that it would become effective only upon an injunction, but then he addressed the merits of whether this clause saved the statute anyway.  And it's not a finding of fact. It's a pure question of law. Okay. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course.